FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 23 2019

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MELANIE SPENCE, as Guardian of
the Estate of Louie Bagwell, incapacitated,
and WILMA BAGWELL                                                                PLAINTIFFS

v.                        No. 3:19-cv-153-DPM

UNITED STATES OF AMERICA                                                          DEFENDANT

## COMPLAINT

Melanie Spence, as Guardian of the Estate of Louie Bagwell, incapacitated, and Wilma Bagwell, by their attorneys, The Brad Hendricks Law Firm, for their complaint state and allege as follows:

1. Plaintiffs bring this cause of action under the provisions of Title 28, United States Code §2671 and amendments thereto, commonly known as the Federal Tort Claims Act. The ward, Louie Bagwell, and his spouse, Plaintiff Wilma Bagwell, reside in Lawrence County, Arkansas. The incident which gives rise to this action occurred at the Memphis VA Medical Center in Memphis, Tennessee. Jurisdiction and venue are based on 28 U.S.C. §1402.

2. On November 19, 2018, Plaintiffs filed formal claims with the U.S. Department of Veterans Affairs, Office of General Counsel in Nashville, Tennessee. More than six months has expired since Plaintiffs filed their claims, consequently, pursuant to 28 U.S.C. §2675, Plaintiffs are filing the present lawsuit.

3. Plaintiff Melanie Spence is the duly appointed Guardian of the Estate and Person of Louie Bagwell, an incapacitated person, by virtue of an Order of the Probate Court of Lawrence County, Arkansas, dated August 20, 2018.

This case assigned to District Judge Marshall
and to Magistrate Judge Deere

4. Plaintiff Wilma Bagwell is the spouse of Louie Bagwell and resides in Lawrence County, Arkansas.

5. On December 18, 2017, Louie Bagwell was not feeling well. His blood pressure was elevated. He called the VA Clinic in Jonesboro, Arkansas at approximately 3:43 p.m. and, per the record of the telephone encounter, was complaining of heart palpitations, a racing heart, and arm pain. Records indicate he was told to go to the emergency room.

6. The next day (December 19) Mr. Bagwell traveled to the emergency department of the Memphis VA. Around 1:00 p.m., he sent a text to his wife and one of his daughters indicating he had arrived at the VA. Per the rapid triage nursing note, he was seen in the emergency department at approximately 1:48 p.m. The triage nurse indicated Mr. Bagwell's chief complaint was that he wanted to be seen because his blood pressure was going up at night. His blood pressure at the time was 167/62. There was nothing documented in the triage note about the phone encounter Mr. Bagwell had with the VA Clinic in Jonesboro on the previous day. The severity index was assessed as Level 4 (non-urgent).

7. Mr. Bagwell returned to the hospital waiting room. Subsequently, family members tried to reach him by telephone and by text, but he was not responding. Finally, at approximately 9:30 p.m., his daughter, Melanie Spence, called the VA and spoke to "Scott." Melanie was placed on hold for approximately 20 minutes while waiting for a nurse to answer. She hung up and immediately called back. Scott apologized for the wait and said that her father had checked into "Fast Track" at 1:30 p.m., but he had not been admitted into the hospital and was not in the ER. He said he assumed Mr. Bagwell left not long after 1:30 p.m. Per the hospital records, Mr. Bagwell had been called back to an examination room at approximately 4:00 p.m. but did not

respond, and it was assumed that he had left the ER.

8. On December 19, 2017, at approximately 11:50 p.m., Mr. Bagwell was found non-responsive in a chair in the ER waiting room. Upon examination it was immediately suspected, and later confirmed, that he has suffered a massive stroke while waiting in the ER. Interval history from the triage nurse, Teresa Gail Reed, to the ER physician (Albert Ndzengue, MD) indicated that Mr. Bagwell had been noted in the waiting area sitting but not talking and upon approach he was noted to be weak and with aphasia. There was an armband on his wrist placed early that afternoon, and the physician documented that when it was placed "he stated he has come to get BP checked and saw cards [sic] yesterday for palpitations."

9. After a CT scan verified the stroke, the neurologist at the VA recommended transfer to Methodist Hospital in Memphis, TN. By the time the stroke was diagnosed, it was too late to administer clot-busting drugs to treat and minimize the effects of the stroke.

10. In an effort to understand what happened to Mr. Bagwell, his family contacted Sharon O'Mearns from VA Risk Management. Ms. O'Mearns asked if the family could meet with the Chief of Staff, which they did on December 20, 2017. Family members present were Wilma Bagwell, Blaine Bagwell, (son), Haley Messer Bagwell (daughter-in-law), Lachelle Burns (daughter), Melanie Spence (daughter), and Wade Spence (son-in-law). Representatives from the VA included Dr. Thomas C. Ferguson (Chief of Staff), Sharon O'Mearns (Risk Management), Lora Kirk (executive assistant to Dr. Ferguson) and Evelyn Miller (acting Associate Director for Patient Care Services). Dr. Ferguson began with sincere apologies. He said that they were going to be completely transparent and share all they knew. During the conversation, family members asked about Mr. Bagwell's visit and why he was not found sooner. Dr. Ferguson stated the

hospital accepted full responsibility, and that many people neglected Mr. Bagwell. One of the most poignant facts was the discussion of the size of the waiting room, which only held about 30 seats. None of the family could understand how Mr. Bagwell could go unnoticed by hospital personnel for nearly 11 hours by hospital personnel.

11. After his discharge from Methodist Hospital, Mr. Bagwell was initially placed at Ridgecrest Health & Rehab in Jonesboro but subsequently was hospitalized at NEA Baptist, and then ultimately placed at The Green House Cottages of Belle Meade until his discharge on May 18, 2018.

12. Plaintiffs claim that there was both ordinary and medical negligence while Mr. Bagwell was in the hospital waiting room. Such negligence consisted of, but is not limited to, the following:

(a) Failure of the emergency department nurse to properly interview, examine and triage Mr. Bagwell. The nurse's documentation, or rather absence of documentation, indicated that she did not obtain an adequate history, nor did she conduct an adequate physical examination.

(b) Failure of the VA to have policies and/or procedures with respect to monitoring patients in the emergency department waiting room.

(c) Failure of VA personnel (medical and non-medical) to maintain appropriate surveillance and observation of emergency department patients such as Louie Bagwell who had been in the department for many hours without anyone checking on him until shortly before midnight.

(d) Failure of VA personnel to actually look for Mr. Bagwell when his family called

    with concerns about his whereabouts (as opposed to just paging him and assuming that he had left the facility when he did not respond).

(e) Otherwise failing to exercise reasonable care and/or failing to comply with standards of care applicable to medical professionals in the same or similar circumstances.

13. As a proximate cause of the negligence as asserted herein, Louie Bagwell's stroke was neither discovered nor treated on a timely basis. Clot-busting medications, such as tPA, are only effective within a 3 to 4 ½ hour time-frame from the onset of stroke symptoms. In this instance, the stroke took place while Mr. Bagwell was in the waiting room. Had the stroke been diagnosed on a timely basis, he would have been a candidate for tPA and potentially transfer to another hospital that had endovascular capabilities. Because of the neglect and the long delay in Mr. Bagwell being noticed in the waiting room, once he was discovered, he was no longer within the window of opportunity for treatment which would have significantly reduced the extent of his permanent deficits.

14. Damages which were proximately caused by the negligence are claimed as follows:

(a) Past and future medical, rehabilitation, and care-taking expenses. Mr. Bagwell is cared for, at home, by his family. He requires 24/7 care and assistance with respect to all aspects of daily living. He is not ambulatory and has very limited communication skills.

(b) Permanent neurologic injury which has affected Mr. Bagwell physically, cognitively and emotionally.

(c) Pain, suffering, and mental anguish suffered in the past and reasonably certain to

be experienced in the future; and,

(d)     Visible results of his injury.

15. Plaintiff Wilma Bagwell is the spouse of Louie Bagwell and claims damages for loss of the services and society of her husband (loss of consortium).

WHEREFORE, Plaintiffs pray for judgment against the defendant in an amount adequate to compensate each of them for the damages sustained, which damages exceed the federal jurisdictional limits in diversity of citizenship cases. Plaintiffs further ask for costs, and all other relief to which they may be entitled.

Respectfully submitted,

*THE BRAD HENDRICKS LAW FIRM*
500 C Pleasant Valley Dr.
Little Rock, AR  72227
(501) 221-0444
(501) 219-0608 (fax)

BY: _____
J. Lamar Porter., ABN 78128